holds money received from qualified mortgages pending distribution to the certificateholders);

b. Qualified Reserve Assets (i.e. any intangible property which is held for investment and is part of a reasonably required reserve to provide for full payment of expenses of the REMIC or amounts due on regular interests in the event of defaults on qualified mortgages or lower than expected returns on cash flow investments. These investments are for specifically defined purposes and are to be passive in nature.

c. Liquidation Proceeds (i.e. Money received from the sale of foreclosed property which is acquired in connection with the default or imminent default of a qualified mortgage held by the Trust.)

140. Upon information and belief, in order to maintain REMIC status, the Trustee and the Servicers must ensure that the REMIC receives no income from any asset that is not a qualified mortgage or a non-permitted investment. 26 U.S.C. § 806F(a)(2)(B).

141. Upon information and belief, prohibited transactions include the disposition of a qualified mortgage (except where the disposition is "incident to" the foreclosure, default, or imminent default of the mortgage); or the receipt of any income from an asset that is not a Qualified Mortgage or a Permitted Investment. 26 U.S.C. § 860F(a)(2)(B).

142. Upon information and belief, under 26 U.S.C. § 860F(a)(1), Prohibited Transactions are taxed at 100% of the REMIC's net income from such prohibited transaction.

143.   Upon information and belief, contributions of any property, e.g., cash, mortgages, etc., made to the REMIC Trust are taxed at 100% of the contribution, with exception to the following four circumstances:

a.   Contributions to facilitate a "clean up call" (i.e. the redemption of a class of regular interest, when by reason of prior payments with respect to those interests the administrative costs associated with servicing that class outweigh the benefits of maintaining the class). Reg. § 1.860G-2(j)(1).

b.   Any cash payment in the nature of a guarantee, such as payments to the REMIC under a surety bond, letter of credit, or insurance policy.

c.   Any cash contribution during the three month period after the startup day; and

d.   Any cash contribution to a qualified reserve fund made by a holder of a residual interest.  As will be shown more fully below, Defendants' conduct in connection with the pervious judgment against Plaintiff Avram and as otherwise complained of herein is barred by and violates the IRC regulations set forth herein.

144.   Upon information and belief, in this case, the Lee Hall loan should have been credited an amount equal to the amount the REMIC Trust's received from foreclosure sales proceeds and should have been credited in the amount equal to the MLMI litigation settlement payment, as indicated in the notice of settlement to certificateholders.  Moreover and most importantly, the Lee Hall loan should have been designated as having been paid in full.

145.   In order to comply with federal and state REMIC rules and regulations, such Lee Hall loan principal and interest credits should have been reflected on the REMIC Trust's Form 1066 tax returns as pass-though income that would eventually be passed to certificateholders.

146.   However, upon information and belief, the REMIC Trust, Wells Fargo and Orix purposefully failed to report to the IRS on Form 1066 tax returns that the REMIC Trust received $13.7 million dollars from the foreclosure sales and $19.375 million MLMI settlement payment.  In addition, the REMIC Trust failed to report any advances made to Orix in connection with Orix's Special Servicer activities and failed to allocate to certificateholders any appraisal reductions that Orix periodically calculated on the collateralized properties of REMIC Trust-owed loans.

147.   Upon information and belief, by failing to report such pass-through income on REMIC Trust tax returns, the REMIC Trust, Wells Fargo and Orix were able to conceal significant amounts of REMIC Trust assets from both the certificateholders and the United States government, while simultaneously being able to continue and commence litigation in order to generate even more money for themselves.

148.   Upon information and belief, any windfall the REMIC Trust would receive from the enforcement proceedings against Avram and Cindy, should automatically be prohibited by the IRS and the PSA.  This is because the Lee Hall loan has been fully paid and so any receipt of funds by the REMIC Trust could not be allocated to the Lee Hall loan, per the provisions of the PSA.  Rather, any windfall that would be generated through the enforcement proceedings must be designated as "non-pass-through" income and would then be taxed at the 100% tax rate.

149.    Conscience of this possible tax treatment of any windfall received from the enforcement proceedings against Avram and Cindy, the REMIC Trust, Wells Fargo and Orix have not reported the foreclosure sales proceeds or the MLMI settlement to the IRS and have continued their litigation activities in secret from the loan depositors, loan aggregators, fellow certificateholders and, most significantly, the United States government..

150.    Upon information and belief, ORIX and Wells Fargo have received numerous windfall settlements totaling approximately $50 million from various lawsuits against numerous loan depositors, including Bank of America, Lehman Brothers, and UBS in connection with the numerous other REMIC trusts they manage and operate.

## FRAUDULENTLY ENFORCING A DISCHARGED GUARANTY

151.   Upon information and belief and as noted above, one of the purposes of designating the MLMI settlement payment as a Settlement of Litigation was to conceal the fact that the Lee Hall loan had actually been fully paid by various principal and interest payments received by the REMIC Trust.

152.   It is wrongful for Defendants the REMIC Trust, Wells Fargo, Orix, and Keycorp to seek or pay further servicing fees and revenues for the Lee Hall loan from the REMIC Trust and the certificateholders.  Defendants Wells Fargo, Orix, and Keycorp are intentionally harming Plaintiffs and the certificateholders by causing the REMIC Trust to violate the Internal Revenue Code.

153.   Upon information and belief, inasmuch as the Lee Hall Loan was fully paid through various principal and interest payments and was designated as liquidated in distribution statements, the REMIC Trust, Wells Fargo, ORIX, and Keycorp continue efforts to collect on the fully discharged guaranty, which caused the guaranty itself to become invalid and unenforceable.  Furthermore, the deficiency judgment against Avram that is based on the discharged, invalid, and unenforceable guaranty itself became invalid and unenforceable at the time the $19.375 million MLM settlement payment was made.

154.   Moreover, upon information and belief, the means by which the REMIC Trust, Wells Fargo, Orix, and Keycorp seek to enforce the deficiency judgment are themselves fraudulent, as follows.  First, Defendants continue to seek enforcement of an alleged guaranty in violation of the IRC, MLPA, and PSA because at the very least the guaranty is either satisfied or is invalid and unenforceable.  Second, by the Defendants misrepresenting their interests in various courts and judicial venues as the Trustee for the

certificateholders rather than for the REMIC Trust itself.  Third, by the Defendants misrepresenting themselves in various courts and judicial venues, both in the United States and abroad, as the Attorney in Fact for the certificateholders when in fact they are not the Attorney-in-fact.  Finally, by violating the civil rights of an alleged guarantor and his family.

## ORIX AND FELLOW CERTIFICATEHOLDERS VIOLATIONS OF THE PSA AND MLPA AND EVIDENCE OF ORIX'S UNLAWFUL BUSINESS PRACTICES AND SYSTEMATIC METHODOLOGY AND PURPOSEFUL SLOPPINESS AND CORRUPTION

155.    Wells Fargo and Orix have misrepresented their interests in various courts of law throughout the United States and Israel.

156.    Each time Wells Fargo and Orix brought suit against Avram and Cindy, they styled the caption of the pleading to represent that Wells Fargo was suing as a Trustee on behalf of the certificateholders.  This is significant because the PSA specifically provided that certificateholders **are not** permitted to sue borrowers and guarantors directly for alleged losses.

157.    Paragraph 11.05 (c) of the PSA provides, in part, as follows:

> No certificateholder shall have any right by virtue of any provision of this Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement or any Mortgage Loan, unless, with respect to any suit, action or proceeding upon or under or with respect to this Agreement, such Holder shall previously have given to the Trustee a written notice of default hereunder....

158.    Rather, the PSA was drafted to permit only the REMIC Trust to commence judicial proceedings against the borrowers and guarantors.  Thus, the certificateholders lacked standing to bring any actions against Avram an alleged guarantor and Cindy.   Four examples of Wells Fargo's and Orix's blatant misrepresentations of their interests in specific lawsuits are as follows: in the Circuit Court of Newport News, Virginia in connection with seeking receivership on the

underlying properties of the Lee Hall Loan[5], in the Circuit Court of the City of Petersburg, Virginia, wherein the deficiency judgment against Avram was entered,[6] the MLMI litigation in Dallas, Texas[7], and the Louisiana state court proceedings[8] that related to the Louisiana bankruptcy proceedings in which Wells Fargo and Orix filed a proof of claim against companies in which Avram allegedly held an interest.

159.    Another eye-opening example of Merrill Lynch's (the REMIC Trust), Wells Fargo's, Orix's, Keycorp's and the certificateholders' unlawful and unwarranted tactics used in courts of law occurred in 2004. The Defendants purposefully submitted to Israeli courts ambiguous affidavits signed by company executives that purportedly gave an Israeli law firm the power to seek enforcement of the deficiency judgment against both Avram and Cindy in Israel.

160.    A number of Wells Fargo and Orix executives, including Jeffery Yarakin, William Fay, Elizabeth Brewster, John Dinan, and Barry Schwartz, either signed ambiguous affidavits or had knowledge and authorized or should have known that such ambiguous affidavits were submitted to various Israeli courts on behalf of the REMIC

---

[5] The caption read as follows: "WELLS FARGO BANK MINNESOTA NATIONAL ASSOCIATION, f/k/a/ Norwest Bank Minnesota National Association, **Trustee for Certificateholders** under that certain Pooling Service Agreement dated and effective as of November 1, 1999, related to the Merrill Lynch Mortgage Investors, Inc. Mortgage Pass-Through Certificates Series 1999-C1 v. LEE HALL, L.L.C. and WEE TALK, L.L.C." Case No. 133972W-01.

[6] The caption read as follows: "WELLS FARGO BANK MINNESOTA NATIONAL ASSOCIATION, f/k/a/ Norwest Bank Minnesota National Association, **Trustee for Certificateholders** Under That Certain Pooling Service Agreement Dated and Effective November 1, 1999, Related to the Mortgage Pass-Through Certificates Series 1999-C1 v. LEE HALL, L.L.C ET AL." Case No. CL01-192.

[7] The caption read as follows: "WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, **as the Trustee for the Certificateholders** of Merrill Lynch Mortgage Investors, Inc. Mortgage Pass-Through Certificates Series 1999-C and ORIX CAPITAL MARKETS, LLC v. UBS WARBURG REAL ESTATE SECURITIES, INC., and UBS PAINE WEBBER, INCORPORATED." Case No. 02-2849.

[8] The caption read as follows: "WELLS FARGO N.A., **as Trustee for Certificateholders** Under that Certain  Pooling Service Agreement Dated and Effective November 1, 1999, Related to the Mortgage Pass-Through Certificates Series 1999-C1, by and Through Its Special Servicer, ORIX Capital Markets, L.L.C. v. Avram Cimerring, Cindy Cimerring et al." Case No. 502.370.

Trust, Wells Fargo, Orix and Keycorp.  Such individuals who signed affidavits have recently been referred to in the public circles as "robo-signers."

161.   In 2004, local Israeli counsel submitted an ambiguous and unverified power of attorney signed by Jeff Yarakin purporting to authorize them to act on Wells Fargo's behalf.  However, the problem exists that Jeffery Yarakin was in fact a high level executive at Orix at the time he signed the power of attorney.

162.   Following the discovery of Jeff Yarakin's ambiguous and unverified power of attorney along with other procedural push backs, William Fay signed an undated, ambiguous, and unverified affidavit on Wells Fargo's behalf to purportedly give local counsel the same power.  Fay's affidavit also purposefully and improperly misrepresented Wells Fargo's right to enforce the judgment in Israel.  In his signed affidavit, William Fay represented to the court that Wells Fargo was authorized to represent its own investors in legal proceedings against Avram and intended for the Israeli courts to rely on this representation and continue the enforcement proceedings. The issue is that Wells Fargo never personally had a claim against any of the parties involved in any Lee Hall loan-related litigation.  Wells Fargo's sole involvement in any of this litigation was solely as Trustee of the Trust itself.

163.   Another ambiguous and unverified affidavit was signed by Elizabeth Brewster in 2009.  It also was submitted to Israeli courts along with Fay's affidavit and misrepresented Wells Fargo's interest in legal proceedings against Avram and Cindy. Elizabeth Brewster's affidavit stated that Wells Fargo was acting as a Trustee, but she purposefully failed to state on behalf of whom Wells Fargo was acting.

164.   Barry Schwartz, the head of Wells Fargo's CMBS department at the time,

knew and approved or should have known that Elizabeth Brewster and William Fay signed and submitted these false affidavits to the Israeli courts.

165.   Such widespread collusion and fraudulent activities among numerous Wells Fargo and Orix executives are examples of Wells Fargo's, Orix's, Keycorp's, and the certificatehloders' unwarranted and unlawful tactics used to mislead various courts in the United States and abroad in their attempt to collect additional funds on a debt that has been fully paid.

166.   The incentive for the certificateholders to bring the actions against Avram and Cindy directly, rather than Orix or Wells Fargo as representatives of the REMIC Trust in which the certificateholders had an interest, was based on the fact that the REMIC Trust, Wells Fargo, and Orix failed to properly allocate the foreclosure proceeds and the MLMI settlement funds.  By not properly allocating these payments as trust assets meant to offset defaulted loans and instead keeping them for Wells Fargo's and Orix's own benefit, the certificateholders did not receive full distribution payments when the time came for such distribution payments to be made.  Commencing actions or proceedings directly against Avram and Cindy, albeit in violation of the PSA, are unlawful attempts to recoup directly the borrowers for losses the certificateholders suffered through Wells Fargo's and Orix's unlawful business practices.

167.   Defendants' unwarranted and unlawful practices as described above have driven investors out of the CMBS investment marketplace.  In addition, Defendants' activities have crippled the mortgage lending market as a whole and have sent the economy into the severe recession and the global financial crisis it is in today.

## SUMMARY

168.   Orix exploited its position as Master Servicer, Special Servicer, and Controlling Class certificateholder, in order to unlawfully generate millions of dollars for itself and it did so off the backs of unsuspecting borrowers and certificateholders by unlawful and unwarranted means.

169.   As Master Servicer and Special Servicer, Orix wrongfully designated numerous performing and non-performing loans for special servicing, at rates much highly than industry standards, because in special servicing Orix generated substantially more fees to "work out" the loans.  In addition, special servicing gave Orix the right to make litigation and distribution advances (a/k/a litigation or distribution loans) to the REMIC Trust as it attempted to "work out" the loans in special servicing.  In exchange for making the litigation and distribution advances to the REMIC Trust, Orix received corresponding interest payments.  Through the distribution advances it made to the REMIC Trust, Orix, as a certificateholder, would continue to receive its rightful distribution payments from the REMIC Trust along with fellow certificateholders. Receipt of distributions payments from the REMIC Trust enabled Orix to maintain its position as the Special Servicer, which enabled Orix to continue designating even more loans for special servicing and continue the cycle once again.

170.   In special servicing, Orix has numerous avenues in attempting to generate additional income for the REMIC Trust.  As it relates to the Plaintiffs, Orix's actions crossed the line of legality and became unlawful as Orix's appetite for unlawful profits grew clouded its better judgment.

171.   Defendants UBS, the REMIC Trust, Wells Fargo, and Keycorp each

where involved either directly or indirectly in Orix's unprecedented and unlawful business practices against the unsuspecting borrowers and each of the Defendants have reaped substantial financial gain for contributing to Orix's activities.

## AS AND FOR THE FIRST CLAIM
(Breach of Contract)

172. Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

173. Avram executed a personal guaranty for the benefit of Wexford in connection with the execution of the Lee Hall loan to Lee Hall, L.L.C. Pursuant to the guaranty, Avram was obligated to pay the debt in the event the primary borrower failed to pay the obligation and the lender failed to receive full payment on the debt through any other means.

174. At closing of the Lee Hall loan, Wexford, the loan originator, immediately transferred its rights and obligations under the loan and personal guaranty to UBS.

175. At closing, pursuant to the loan agreement and with Avram's alleged personal guaranty in place, UBS transferred $17.4 million to Lee Hall, L.L.C.

176. Subsequent to the Lee Hall loan's execution, UBS transferred its one hundred percent interest in the Lee Hall loan and Avram's alleged personal guaranty to the REMIC Trust. Wells Fargo, as the Trustee of the REMIC Trust, and ORIX and Keycorp, as the Master Servicers and Special Servicer, were tasked with executing the rights and responsibilities, including implied duties, the REMIC Trust received from UBS in the transfer of the Lee Hall loan and Avram's guaranty. Thus, privity of contract exists between the REMIC Trust, Wells Fargo, Orix, Keycorp, and Avram. The REMIC Trust, Wells Fargo, Orix, and Keycorp were all obligated to execute their rights and responsibilities under the Lee Hall loan and the personal guaranty solely by lawful means.

177. Upon information and belief, the Lee Hall loan was foreclosed upon and

the underlying properties were sold at a foreclosure auction.  As set forth above, the REMIC Trust received or should have received an approximate total of $13.4 million from the foreclosure sales.

178.    Furthermore, upon information and belief, the REMIC Trust received $19.375 million from the settlement of the separate but related MLMI litigation against UBS in Texas.   As previously set forth, a Texas court determined that approximately $8.7 million of UBS's settlement payment was paid directly to offset losses from the Lee Hall loan.

179.    Thus, the REMIC Trust, Wells Fargo, Orix, and Keycorp received or should have received at least $22 million in connection with losses associated with the default of the Lee Hall loan.  This amount is approximately $5 million more than the actual Lee Hall loan.

180.    Upon receipt of the $19.375 million, Plaintiffs failed to treat the Lee Hall loan as having been fully paid and failed to designate Avram's personal guaranty as having been fully discharged.  Instead, Defendants continue unlawful and unwarranted litigation against both Avram and Cindy for the enforcement of the $6.6 million judgment against Avram.

181.    Such an egregious failure to treat the Lee Hall loan as having been fully satisfied and Defendants' continuation of unlawful litigation, or the authorization thereof, in various jurisdictions is a breach of Avram contractual rights under the personal guaranty that set forth he is responsible for the loan only in the event that the lender and its successors and assigns were not fully paid.

182.    As to Orix, the breach was also due to their exploitation of the conflict of

interest in representing both the REMIC Trust, as Master Servicer, while simultaneously representing itself and the certificateholders, as the Special Servicer.

183.   Plaintiffs have been damaged as a result of Defendants' wrongfully and unlawfully actions.

184.   As a result of said breach, Plaintiffs are entitled to all statutory and common law damages to be determined at trial, but believed to be at least $13.2 million, with interest thereon and for the costs and disbursements of this action.

185.   Plaintiffs are entitled to punitive damages for the actions and omissions of the Defendants as described.

## AS AND FOR THE SECOND CLAIM
(Breach of Implied Covenant of Good Faith of Fair Dealing)

186.   Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

187.   Under section 5.3 of the alleged guaranty executed between Wexford and Avram, it sets forth that the guaranty is governed by and construed in accordance with the laws of the State of Virginia.

188.   Under Virginia and New York law, every contract contains an implicit covenant of good faith and fair dealing owed by the parties to one another in the performance of their obligations.  Thus, implicit in the guaranty are covenants of good faith and fair dealing in the course of contractual performance.  Pursuant to these covenants, Wexford implicitly pledged that it will take no action or will cease any action that would result in injury to the rights of Avram as an alleged party to the guaranty.

189.   The rights and responsibilities owed by Wexford to Avram under the guaranty were transferred to UBS and transferred a second time to the REMIC Trust pursuant to the MLPA and PSA.  Wells Fargo, Orix, and Keycorp contracted to execute the rights and responsibilities purchased by the REMIC Trust in connection with the guaranty and the Lee Hall loan.

190.   The REMIC Trust, Wells Fargo, Orix, and Keycorp breached the covenant of good faith and fair dealing by continuing and/or initiating the various legal proceedings against Avram and Cindy despite the REMIC Trust receiving full payment on the Lee Hall loan through the REMIC Trust's receipt of the foreclosure sales proceeds and the MLMI settlement payment.  Such actions have damaged Avram and Cindy by depriving Avram of his contractual rights under the guaranty to only be responsible to

pay back the Lee Hall loan in the event the Lender and its successors and assigns were not fully repaid. Once the loan was repaid, the guaranty obligations were discharged and causing the guaranty to become invalid and unenforceable. In addition, since the Lee Hall loan was fully paid, any judgment based on the guaranty obligations should also have been deemed invalid and unenforceable.

191.   To the extent that the REMIC Trust, Wells Fargo, Orix, and Keycorp committed wrongful acts in breach of the implied covenants of good fair and fair dealing under the guaranty, Avram and Cindy have been further damaged in the amount of at least its attorneys fees and expenses incurred in defending the claims asserted by the REMIC Trust, Wells Fargo, Orix, and Keycorp in the various proceedings both within the United States and Israel.

192.   As a result of The REMIC Trust, Wells Fargo, Orix, Keycorp breaches of implied covenants of good faith and fair dealing in the guaranty, Avram and Cindy are entitled to recover damages and its reasonable attorneys' fees in pursuing this action.

193.   As a result of said breach, Plaintiffs are entitled to all statutory and common law damages to be determined at trial, but believed to be at least $13.2 million, with interest thereon and for the costs and disbursements of this action.

194.   Plaintiffs are entitled to punitive damages for the actions and omissions of the Defendants as described.

## AS AND FOR THE THIRD CLAIM
(Misrepresentation)

195.   Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

196.   At the time the Lee Hall loan was being originated, Wexford represented to Avram that by becoming a guarantor on the Lee Hall loan, Avram was to be personally liable for the debt undertaken by Lee Hall L.L.C. in the event the debt was not paid by Lee Hall L.L.C., the borrower, or by any other means, including third parties.

197.   In addition, Wexford represented that it would faithfully execute its rights and responsibilities under the personal guaranty and it would act with good faith and fair dealing in doing so.

198.   Wexford knew that Avram would rely upon these representations.

199.   The representations were material.

200.   In reliance on the representations, Avram allegedly signed and entered into the personal guaranty for the Lee Hall loan.

201.   Wexford's representations, rights and responsibilities under the personal guaranty passed to UBS at the time the Lee Hall loan closed.  UBS's representations, rights and responsibilities under Avram's personal guaranty acquired from Wexford were passed to the REMIC Trust at the time the REMIC Trust acquired ownership of the Lee Hall loan.  Wells Fargo, as Trustee, Orix, as the Master Servicer and Special Servicer, and Keycorp, as Master Servicer following its purchase of master servicing rights from Orix in 2005, were all tasked with enforcing the rights and responsibilities, and adhering to the representations made to Avram, that were owned by the REMIC Trust and the certificateholders in connection with the Lee Hall loan and Avram's personal guaranty.

202.    However, the REMIC Trust, Wells Fargo, Orix, and Keycorp misrepresented that they would only seek collection of the Avram under the guaranty in the event the Lee Hall loan was not fully paid and they misrepresented that they would act in good faith and fair dealing with respect to Avram's guaranty.

203.    Wells Fargo, ORIX and Keycorp have continued litigation against Avram and Cindy to enforce the judgment against Avram even though the debt had been fully paid and the obligations under the guaranty have been fully executed and discharged. This constitutes a breach of the representation not to seek collection if the debt was fully paid and a breach of the duty of good faith and fair dealing owed to Avram as a personal guarantor of the Lee Hall loan.

204.    As a result of said breaches, Plaintiffs suffered losses.  Plaintiffs are entitled to all statutory and common law damages to be determined at trial, but believed to be at least $13.2 million, with interest thereon, and for the costs and disbursements of this action.

205.    Plaintiffs are entitled to punitive damages for the actions and omissions of the Defendants as described.

## AS AND FOR THE FOURTH CLAIM
(Negligence and Gross Negligence)

206.   Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

207.   As part of Merrill Lynch's acquisition of the Lee Hall loan and Avram's personal guaranty and Wells Fargo's designation as Trustee of the REMIC Trust, Merrill Lynch and Wells Fargo acquired a duty of care to act in good faith and fair dealing to ensure against any and all unwarranted and unlawful collection tactics, including the unwarranted commencement and continuation of litigation against borrowers of the loans owned by the REMIC Trust.

208.   As a principal of Lee Hall L.L.C. and as an alleged personal guarantor on the Lee Hall loan, Avram was owed said duty of care.

209.   Defendants were reckless, careless, negligent and grossly negligent in performing their duties as fiduciaries and/or parties to the alleged personal guaranty signed by Avram, in failing to discontinue litigation against Avram and Cindy that attempted to collect additional payment on the Lee Hall loan based on an unenforceable deficiency judgment, and on commencing additional litigation against Avram and Cindy in the Untied State and Israel to collect additional payments on the Lee Hall loan based on an unenforceable judgment.

210.   In addition, Wells Fargo and Orix were grossly negligent in permitting their employees to sign ambiguous and unverified powers of attorney and affidavits, as they should have known about such activities.

211.   Merrill Lynch's and Wells Fargo's negligent failure to halt Orix's

unwarranted and unlawful actions against Avram and Cindy once the REMIC Trust received full payment on the debt is a clear breached the duty of care owed to Avram and Cindy.

212.   As a result of Defendants' recklessness, carelessness, negligence, and gross negligence, Plaintiffs have suffered damages in that they expended funds necessary to defend against such unlawful litigation, suffered substantial economic loss as a result of a significant loss in creditworthiness, and other economic loses and suffered sever emotional distress as a result.

213.   As a result of the foregoing, Plaintiffs are entitled to all statutory and common law damages to be determined at trial, but believed to be at least $13.2 million, with interest thereon, and for the costs and disbursements of this action.

214.   Plaintiffs are entitled to punitive damages for the actions and omissions of the Defendants as described.

## AS AND FOR THE FIFTH CLAIM
(Unjust Enrichment)

215.    Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

216.    Avram's entering into the personal guaranty on the Lee Hall loan enabled Defendants to engage in unwarranted and unlawful collection procedures for their sole benefit.

217.    ORIX has been unjustly enriched by its receipt of reimbursement payments for litigation expenses plus interest in connection with the unwarranted and unlawful continued litigation against Avram and Cindy to collect on a debt that has been fully paid.

218.    **The REMIC Trust, Wells Fargo, Orix, and Keycorp would be unjustly enriched by the successful enforcement of a deficiency judgment against Avram when the debt on the Lee Hall loan has been fully paid.**

219.    As a result of the foregoing, Plaintiffs are entitled to all statutory and common law damages to be determined at trial, but believed to be at least $13.2 million, with interest thereon and for the costs and disbursements of this action.

220.    Plaintiffs are entitled to punitive damages for the actions and omissions of the Defendants as described.

## AS AND FOR THE SIXTH CLAIM

(Frivolous Conduct as against Defendants UBS, the REMIC Trust, Wells Fargo, Orix, and Keycorp)

221.    Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

222.    Upon information and belief, the Lee Hall loan defaulted and the underlying properties were foreclosed upon.  The underlying properties were sold at a foreclosure auction and, as set forth above, the REMIC Trust received or should have received an approximate total of $13.7 million from the foreclosure sales.

223.    In 2004, the MLMI litigation was settled was the sum of $19.375 million. Under the terms of the agreement, the REMIC would retain ownership in the Lee Hall loan and UBS would not have to admit to any wrongdoing.

224.    However, Defendants the REMIC Trust, Wells Fargo, Orix and UBS conspired to designate the settlement proceeds as a "Settlement of Litigation" while failing to allocate the proceeds to outstanding principal and interest payment on the Lee Hall loan.  Such designation is improper under the provisions of the PSA and the MLPA and was purposefully done so that UBS would not have to gain an unsatisfactory marketplace reputation.  From UBS's perspective, its only options were to replace the Lee Hall loan, cure the Lee Hall loan, or repurchase the Lee Hall loan.  Pursuant to the Judge Ashworth's decision in Dallas, Texas, UBS paid the settlement to cure the Lee Hall loan.  However, UBS conspired to call the settlement proceeds something else not authorized by the PSA in order to preserve its marketplace reputation.

225.    Upon receipt of the $19.375 million by the REMIC Trust, the guaranty and the obligations thereunder had been fully executed and discharged and the guaranty

itself became invalid and unenforceable. Defendants failed to treat the Lee Hall loan as having been fully paid and failed to designate Avram's personal guaranty as having been fully discharged. Instead, Defendants continue unlawful and unwarranted litigation against both Avram and Cindy for the enforcement of the $6.6 million deficiency judgment against Avram.

226.   The REMIC Trust's, Wells Fargo's, Orix's , Keycorp's, the certificateholders' frivolous conduct in attempting to collect on a guaranty, the obligations under which have been fully satisfied by various principal and interest payments, included: misrepresenting Defendants implied duties and responsibilities under the guaranty, Orix's exploitation of and profiteering on the conflicts of interest in which Orix purposely put itself as the REMIC Trust's Master Servicer, Special Servicer, and certificateholder by generating costs and expenses through litigation and enforcement of a guaranty and deficiency judgment that was based on a loan that was fully paid, and by Defendants' intentional signing and submission of false and/or ambiguous affidavits to Israeli courts to commence and continue enforcement proceedings in Israel.

227.   Plaintiffs' have been damaged by expending funds necessary to defend against such unwarranted litigation, suffered substantial economic loss as a result of a significant loss in creditworthiness, and other economic loses and suffered sever emotional distress as a result.

228.   As a result of the foregoing, Plaintiffs are entitled to all statutory and common law damages to be determined at trial, but believed to be at least $13.2 million, with interest thereon and for the costs and disbursements of this action.

229.   Plaintiffs are entitled to punitive damages for the actions and omissions of

the Defendants as described.

## AS AND FOR THE SEVENTH CLAIM
(Double Recovery as against Defendants the REMIC Trust, Wells Fargo, Orix, and Keycorp)

230.   Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

231.   Upon information and belief, the Lee Hall loan defaulted and the underlying properties were foreclosed upon.  The underlying properties were sold at a foreclosure auction and, as set forth above, the REMIC Trust received or should have received an approximate total of $13.7 million from the foreclosure sales.

232.   Furthermore, upon information and belief, the REMIC Trust received $19.375 million from the settlement of the separate but related MLMI litigation against UBS in Texas.   As previously set forth, the Texas state court in the MLMI litigation determined that approximately $8.7 million of UBS's settlement payment was paid by UBS directly to offset losses from the Lee Hall loan.

233.   Thus, the REMIC Trust, Wells Fargo, Orix, and Keycorp received or should have received at least $22 million in connection with losses associated with the default of the Lee Hall loan.  This amount is approximately $5 million more than the actual Lee Hall loan.

234.   Upon receipt of the $19.375 million, the guaranty and the obligations thereunder had been fully discharged and became moot, invalid and unenforceable. Plaintiffs failed to treat the Lee Hall loan as having been fully paid and failed to designate Avram's personal guaranty as having been fully discharged.  Instead, Defendants continue unlawful and unwarranted litigation against both Avram and Cindy for the enforcement of the $6.6 million judgment against Avram.

235.   Any additional amount recovered in connection with the Lee Hall loan from Avram and Cindy or any other person or entity would amount to a double recovery on the underlying debt of approximately $17.4 million.  Such collection is unwarranted and unlawful.

236.   Plaintiffs' have been damaged by expending funds necessary to defend against such unwarranted litigation, suffered substantial economic loss as a result of a significant loss in creditworthiness, and other economic loses and suffered sever emotional distress as a result.

237.   As a result of the foregoing, Plaintiffs are entitled to all statutory and common law damages to be determined at trial, but believed to be at least $13.2 million, with interest thereon and for the costs and disbursements of this action.

238.   Plaintiffs are entitled to punitive damages for the actions and omissions of the Defendants as described.

## AS AND FOR THE EIGHTH CLAIM
### (Judicial Estoppel)

239.   Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

240.   Pursuant to the Lee Hall loan foreclosure action judgment, the four underlying properties that collateralized the $17.4 million Lee Hall loan were sold at a foreclosure auction.  As set forth above, Merrill Lynch (the REMIC Trust) received or should have received approximately $13.7 million in proceeds from the foreclosure sales of the four properties.

241.   Furthermore, as set forth above, Merrill Lynch received or should have received $19.375 million pursuant to a court approved MLMI litigation settlement, at least $8.7 million of which was directly paid by UBS to the REMIC Trust, Wells Fargo, and Orix in connection with the Lee Hall loan.

242.   Moreover, Merrill Lynch (the REMIC Trust) received or should have received at least $22 million but possibly as much as $33 million in connection with the repayment of the $17.4 million Lee Hall loan.  Thus, all the rights and obligations of all parties, successors and assigns to the Guaranty have been fully discharged and it follows that, because there is no longer a deficiency in the amount owed on the Lee Hall loan, the deficiency judgment against Avram is unenforceable.

243.   Nevertheless, the Defendants continue to attempt to collect additional funds from Avram and Cindy on the Lee Hall loan using the unenforceable deficiency judgment.  Merrill Lynch has authorized Wells Fargo, ORIX, and Keycorp to continue the unwarranted and unlawful litigation and enforcement actions against Avram and Cindy in numerous jurisdictions within the United States and Israel.